106-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
NEPTUNE SHIPPING S.A.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEPTUNE SHIPPING S.A.,

          Plaintiff,

-against-

C & MERCHANT MARINE CO. LTD f/k/a
SEYANG SHIPPING CO. LTD,

          Defendant.

JUDGE SWAIN

08 CV 2014

08 Civ _____ (____)

**VERIFIED COMPLAINT**



FEB 2 8 2008
U.S.D.C. S.D.N.Y.
CASHIERS

    Plaintiff, NEPTUNE SHIPPING S.A. (hereinafter "NEPTUNE") for its Verified Complaint against Defendant C & MERCHANT MARINE CO. LTD f/k/a SEYANG SHIPPING CO. LTD (hereinafter "CMM") alleges upon information and belief as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.  At all times material hereto, Plaintiff NEPTUNE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960.

3.  At all times relevant hereto, Defendant CMM was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 13-14th Floor, Changgyo Building 1, Changgyo-dong Chung-gu, Seoul, Korea.

4.  On or about November 29, 2006, Defendant CMM, as charterer, entered into a maritime contract of charter party with Plaintiff NEPTUNE, as disponent owner[1], for use of the M/V CMB YANGTZE for a period of 4 to 6 months plus/minus 15 days at charterer's option.

5.  Defendant CMM, in turn, sub-chartered the vessel to non-party Bright Shipping which, in turn, sub-sub chartered the vessel to non-party Daewoo Logistics which, in turn, sub-sub-sub chartered the vessel to non-party Industrial Carriers Inc.

6.  Pursuant to its charter with Plaintiff NEPTUNE, Defendant CMM was obligated to pay charter hire at the rate of $31,750 per day pro rata for the duration of the charter period.

7.  On May 29, 2007 at 0945 hours, Plaintiff NEPTUNE duly delivered the M/V CMB YANGTZE into the service of Defendant CMM, and duly performed its obligations under the charter.

8.  Under the terms of the charter with Plaintiff NEPTUNE, Defendant CMM was obligated to redeliver the vessel to NEPTUNE at or before December 14, 2007 at 0945 hours.

9.  In breach of the charter, Defendant CMM redelivered the vessel to Plaintiff NEPTUNE on January 5, 2008 at 1840 hours, approximately 22 days after the date CMM was obligated to redeliver the vessel.

---

[1] NEPTUNE is not the actual owner of the vessel but instead had chartered the vessel from another entity.

NYDOCS1/299492.1

10. In anticipation of the timely redelivery of the vessel by Defendant CMM, Plaintiff NEPTUNE entered into a charter with non-party Probulk Carriers Ltd. at the daily hire rate of $66,000. Under the charter with non-party Probulk, Plaintiff NEPTUNE was obligated to deliver the vessel not later than December 15, 2007.

11. As a matter of English law, Plaintiff NEPTUNE is entitled to the market rate of hire for the vessel for the time during which Defendant CMM overran the charter period by not redelivering the vessel as agreed under the charter.

12. The market rate of hire for the vessel during the overrun period from December 14, 2007 (the date CMM was obligated to redeliver the vessel) to January 5, 2008 (the date CMM actually redelivered the vessel) was $66,000 per day pro rata, i.e., the rate of hire of the NEPTUNE – Probulk charter.

13. As a direct result of the breach of the charter by Defendant CMM, the vessel was unable to be timely delivered by NEPTUNE to non-party Probulk. Accordingly, non-party Probulk duly canceled the charter as was its right under terms of the NEPTUNE – Probulk charter party.

14. At the conclusion of the NEPTUNE- CMM charter, Plaintiff NEPTUNE issued a final hire statement to Defendant CMM showing a balance of $1,009,925.65 due in favor of NEPTUNE under the charter.

15. In further breach of the NEPTUNE – CMM charter, and despite due demand, Defendant CMM has failed and/or otherwise refused to pay certain amounts earned by Plaintiff NEPTUNE and outstanding under the charter, and the entire amount of $1,009,925.65 remains unpaid and owing.

16. In order to attempt to obtain security for its losses arising out of Defendant CMM's breach, NEPTUNE exercised its right under the NEPTUNE – CMM charter to lien sub-hires. In all, NEPTUNE placed a lien on $942,320.02 of sub-hires that had been paid by non-party Industrial Carriers Inc. to non-party Daewoo Logistics.

17. In response, non-party Daewoo Logistics has challenged NEPTUNE's lien on the sub-hires, and non-party Industrial Carriers Inc. has commenced an interpleader proceeding in London to determine which entity is entitled to the liened sub-hires.

18. As a matter of English law, NEPTUNE is prohibited from enforcing a favorable arbitral award against Defendant CMM on any of the liened sub-hires while they are being challenged. Unless the London arbitrators determine that the liened sub-hires are to serve as security for NEPTUNE, NEPTUNE will be prohibited from ever enforcing a favorable award as against these amounts. Accordingly, the challenged liened sub-hires do not presently provide Plaintiff NEPTUNE with any security for its claims against Defendant CMM.

19. The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and NEPTUNE specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been commenced by NEPTUNE on February 12, 2008. CMM has failed to notify NEPTUNE of the appointment of its arbitrator within the prescribed period of 14 days.

20. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff NEPTUNE's claims made or to be made in the London arbitration under English law, as agreed by the parties.

21. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

22. Plaintiff NEPTUNE estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $100,000. Interest anticipated to be awarded is estimated to be $72,572.28 (calculated at the rate of 7% per annum compounded quarterly for a period of 12 months, the estimated time for completion of the proceedings in London).

23. In all, the claim for which Plaintiff NEPTUNE sues in this action, as near as presently may be estimated, totals $1,182,497.93, interest, no part of which has been paid by Defendant CMM, despite due demand. Plaintiff NEPTUNE specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure NEPTUNE.

### Request for Rule B Relief

24. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant C & MERCHANT MARINE CO., LTD f/k/a SEYANG SHIPPING CO. LTD (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other

garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

    25.    The total amount sought to be attached pursuant to the above is $1,182,497.93.

WHEREFORE, Plaintiff NEPTUNE SHIPPING S.A. prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$1,182,497.93** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant C & MERCHANT MARINE CO. LTD f/k/a SEYANG SHIPPING CO. LTD, including but not limited to ASSETS in its name and/or being transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

    d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
February 28, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
NEPTUNE SHIPPING S.A.

By: _____
Michael E. Unger (MU 0045)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 (fax)

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client, and independent investigations conducted by this office.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
28th day of February 2008

_____
Notary Public

MELISSA COLFOR...
Commiss...  ...eds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08

NYDOCS1/299492.1